*270 OPINION OF THE COURT
James C. O’Shea, J.
The above-captioned claims for damages to claimants’ real property were directed to be tried together, without consolidation, by order of Honorable Edward M. Murray, dated September 21, 1981. Said damages allegedly occurred after a dam was breached on the flood-swollen Schroon River in the County of Warren, State of New York, on April 4,1976. The Sweet-Toney lands suffered extensive erosion, while the Sit’N Bull and 1000 Acres properties were subjected to expansive silt deposits. Claimants contend, inter alia, that the decision to dig a diversionary channel around the dam was negligently made by the New York State Department of Environmental Conservation and that the State should therefore be held liable for the resulting damages.
I. ISSUE OF TIMELINESS

Sweet-Toney Claim:

A notice of intention was filed by claimants Sweet and Toney on June 24,1976, 81 days after the dam breach and accompanying erosion, and a claim was thereafter filed on July 1, 1977. Clearly, said claim was timely filed (see Court of Claims Act, § 10, subd 3), and the defendant has made no allegations to the contrary.

Sit’N Bull-1000 Acres Claim:

Claimants Sit ’N Bull and 1000 Acres filed notices of intention on July 20, 1977 and a claim on April 16, 1979. The State argues that any cause of action herein accrued on April 4, 1976 when the dam was breached, and that based on the 90-day filing requirement of subdivision 3 of section 10 of the Court of Claims Act and the above-noted filing dates, said claim is untimely.
In support of this contention, the State points to a prior proceeding commenced by these claimants against the County of Warren concerning said county’s alleged involvement in the dam breach. Therein the Supreme Court determined that any cause of action against the county accrued when the events upon which the claim was based occurred. (See Sit’N Bull Ranch & Country Club v Warrensburg Bd. & Paper Co., Supreme Ct, Warren County, *271 Sept. 17, 1979, Shea, J. [dismissing the action against the county].) Moreover, the State takes the position that the effect of the Supreme Court ruling is to collaterally estop claimants from asserting an accrual date later than April 4, 1976. Accordingly, the State reasons, the claim must be dismissed for failure to timely file.
Subdivision 3 of section 10 of the Court of Claims Act requires that a claim or notice of intention be filed within 90 days “after the accrual of such claim”. However, the courts have consistently held that these words do not have the same meaning as when a “cause of action accrued”. (See Dufel v State of New York, 198 App Div 97, 102; Moltion v State of New York, 193 Misc 850, affd 277 App Div 835, affd 302 NY 177; see, also, CPLR 203.) Specifically, while an action against a municipality or individual accrues on the date of the occurrence of the events giving rise to the action (see General Municipal Law, §§ 50-e, 50-i; Erickson v Town of Henderson, 30 AD2d 282, 284; Phillips v Village of Waterford, 48 AD2d 745, 746; see, also, CPLR 203; Schwartz v Heyden Newport Chem. Corp., 12 NY2d 212), a claim against the State does not accrue until the full extent of claimant’s damages are ascertainable. (See Allen v State of New York, 208 Misc 385, affd 2 AD2d 644; Jaycox v State of New York, 35 Misc 2d 477; Molinaro v State of New York, 23 Misc 2d 938.)
Therefore, since the issue decided against Sit’N Bull and 1000 Acres in the Supreme Court action (viz., that the events which gave rise to the claim occurred on or about April 4, 1976), is not the issue which is determinative in this court (viz., the date when the full extent of the damages were ascertainable), collateral estoppel will not operate to preclude a finding of timeliness. (See Schwartz v Public Administrator of County of Bronx, 24 NY2d 65, 71.)
Continuing then, the damages allegedly sustained by claimants Sit ’N Bull and 1000 Acres involved the deposit on their lands of soil which had eroded from property adjacent to the breached dam.[1] Due to the fact that the subject establishments were located some four miles down *272 stream from the dam, the soil deposits did not begin to form until the spring of 1977. Moreover, the president of these corporation claimants testified that it was not until May, 1977 that the river receded and revealed the full extent of the damage. The defendant offered no evidence to contradict this testimony. Therefore, we find that the claim of Sit ’N Bull and 1000 Acres against the State of New York accrued in May, 1977. (See Moltion v State of New York, 302 NY 177, 185, supra.) Hence, the notices of intention filed on July 20,1977 and the claim filed on April 16,1979 were timely (Court of Claims Act, § 10, subd 3), and the defendant’s motion to dismiss the Sit ’N Bull-1000 Acres claim as time barred is denied. Accordingly, the court will proceed to the merits of the said claim as well as those of the Sweet-Toney claim.
II. FACTUAL BACKGROUND
The Schroon River flows generally from east to west into the Hudson River, which flows from north to south. A dam owned entirely by the Warrensburg Board and Paper Company spans the river adjacent to said company’s mill. On the north side of the dam is a wingwall or retaining wall abutting the north bank and running upstream from a concrete spillway. A flume or raceway was located next to the south end of the spillway. Another retaining wall was located along the south bank, also running upstream from the dam proper.
Slightly south of the dam was the paper company and further south of this was Route 418, a power line and several homes. On the north shoreline, downstream from the dam, was land owned by Niagara Mohawk Power Corporation. Further north and behind the utility company lands was property owned by claimants Sweet and Toney.
Situated approximately four miles downstream of the dam, on the west side of the Hudson River just south of the confluence with the Schroon, is the 1000 Acres Ranch *273 Resort. Moreover, the dude ranch and golf course comprising this establishment are located approximately one-half mile from one another.
On April 3, 1976, flooding, brought on by spring thaws, started to peak on the Schroon River. By April 4, it had worsened and the paper company’s plant was surrounded by water, a railroad spur had been washed out, a pollution plant and small warehouse were destroyed, and a railroad car and tractor trailer had been overturned. There was added concern about Route 418, which was finally closed to traffic. A bridge located about a quarter of a mile upstream of the dam was also shut down.
On the morning of April 4 various personnel representing Niagara Mohawk, the County of Warren Highway Department, railroad employees, the superintendent of the mill, the Red Cross, the State Police, and the local Sheriff’s patrol, assembled at the site of the dam. There was much discussion concerning the remedial steps to be taken. The owners of the mill were present and wanted the dam to be breached so as to save their plant. There was a general consensus that a diversionary channel, designed to relieve the pressure on the dam and lower the river level, should be dug on the north side of the dam.
A Department of Environmental Conservation (DEC) official, one George Koch, arrived around noon and all involved parties determined that any action affecting the dam would require DEC approval. Moreover, the parties were advised that one Victor Glider, a ranking DEC official, would soon be at the site. Mr. Glider subsequently arrived at approximately 2:30 that afternoon. Thereafter, he was briefed on the situation by Mr. Koch, by the people representing the mill owners and by various other interested individuals. Collectively they sought his permission to dig the channel on the north side of the dam, which permission he finally gave.
Two mill employees, using a backhoe and bulldozer owned by one of said employees, and aided by several private individuals, dug the ditch in approximately two and one-half hours. Aside from Mr. Glider’s grant of permission, no State employee was involved either in deter *274 mining the methods to be used in breaching the dam or in providing the actual labor.
As a consequence of the dam’s breach the river’s north bank adjacent to the diversionary channel rapidly began to erode. Eventually the washing away extended into the Sweet-Toney property, causing the loss of six acres of Sweet-Toney land.
Moreover, and as previously noted, this eroded material was ultimately deposited downstream, with much of it winding up on the 1000 Acres Ranch Resort. The deposits adjacent to the 1000 Acres dude ranch were in the form of sand bars in the river which precluded water skiing and other sports by the guests of said ranch. The 1000 Acres golf course was damaged by deposits of sand and gravel on the course itself. Loss of revenue was allegedly sustained at both locations. Further items of damage concern the removal of sand and gravel from the golf course, as well as permanent damage to the facility.
III. LIABILITY
Claimants herein seek to hold the State of New York responsible for the damage to their lands by reason of the alleged negligence of the State’s Department of Environmental Conservation employees. They propound two areas wherein the DEC is said to have breached a duty to claimants, viz., the granting of permission by the DEC, pursuant to ECL 15-0501, for the breach of the subject dam without considering the consequences to adjacent landowners, and, the DEC’s failure to properly inspect and cause the repair of the dam, in derogation of ECL 15-0507.
Although the State has waived its sovereign immunity and has consented to be sued for the torts of its employees (Court of Claims Act, § 8), this waiver is not absolute, the State having retained its immunity relative to acts which are purely governmental in nature. Hence, no liability will attach for judicial or quasi-judicial decisions (see Rottkamp v Young, 21 AD2d 373, affd 15 NY2d 831), nor will a cause of action lie for the failure of the executive or legislative branches to carry out a duty owed to the general public. (See Motyka v City of Amsterdam, 15 NY2d 134; see, also, Poysa v State of New York, 102 Misc 2d 269.)
*275 In this regard, the “Water Resources Law” (ECL art 15, formerly Conservation Law, art 5), was enacted for the general health, safety and welfare of the people of the State of New York and not for the private interests of any specific landowner. (See ECL 15-0103, 15-0105; see, also, Matter of Sperry Rand Corp. v Water Resources Comm., 30 AD2d 276, 278; Van Buskirk v State of New York, 38 AD2d 349, 351.) Moreover, since the duties set forth in the Water Resources Law are to be carried out for the benefit of the general public, the DEC cannot be cast in damages for any failure to comply with the provisions of said law. (See Southworth v State of New York, 47 NY2d 874, 876.) Rather, to establish a viable cause of action, it must be shown that the department assumed a special affirmative duty toward claimants and that said duty was performed in a negligent manner. (Haskell v State of New York, 81 AD2d 953, 954; see, also, Florence v Goldberg, 44 NY2d 189, 196; Evers v Westerberg, 38 AD2d 751, affd 32 NY2d 684.)
Therefore, in order to determine whether the claimants herein were owed some special duty we must examine the nature and scope of the DEC’s involvement in the incident at bar.

Decision to breach the dam:

Claimants, while acknowledging that the digging of the diversionary channel may have been emergency work performed for the protection of the health, safety and well-being of the public, contend that such emergency work was permissible only if the DEC received written notice “within forty-eight hours after the commencement of the work” (ECL 15-0501, subd 6). Said notice was never directed to the DEC.
Aside from the fact that department officials were at the site prior to the commencement of any work and written notification would therefore have been superfluous, the above-cited provision is clearly designed to protect the interests of the DEC and the general public and cannot form the basis of any special obligation to claimants herein.
Moreover, the actual granting of permission by the appropriate department officials for the breach of the subject dam did not, in and of itself, create a special duty to these *276 individual claimants. As stated by the Appellate Division in Van Buskirk v State of New York (38 AD2d 349, 351-352, supra): “The owner of the land and riparian rights at the point where the dam was constructed at all times was the one who had the power and right to construct [or breach] the same, the State merely being in a position to prevent such use if it determined the same to be against the public interest. To permit such use upon certain conditions only leaves the matter to the landowner as to whether or not he wants to proceed with his proposed use.”
Mr. Glider did not mandate the breach of the dam, nor did he accept responsibility for any consequences arising therefrom. To the contrary, he made it clear to the mill owners’ representatives that they would have to assume full responsibility for any damage to private property. Moreover, the DEC did not undertake performance of the operation, nor did it take any other affirmative action upon which liability might be predicated. (See Evers v Westerberg, 38 AD2d 751, affd 32 NY2d 684, supra.)
Aside from the absence of any facts which would establish the presence of a special duty, the very nature of the DEC’s activity is couched in immunity. Specifically, Mr. Glider’s decision to permit the dam to be breached required the exercise of judgment and discretion, and was a quasi-judicial determination from which a cause of action does not lie. (See Burgundy Basin Inn v State of New York, 47 AD2d 692; Charles O. Desch, Inc. v State of New York, 50 AD2d 253; see, generally, Weiss v Fote, 7 NY2d 579.)
Based on the foregoing, we find that the State cannot be held liable for granting permission for the subject dam to be breached.

Inspection of the Dam:

As an alternative argument in support of liability, claimants allege that the DEC failed to conduct adequate inspection of the subject dam as required by ECL 15-0507. They point out that department employees inspected the dam in 1970 and found the dam wall and spillway to be in need of repair. However, a notice setting forth department findings was not sent to the owners of the dam until *277 January, 1972. Moreover, claimants continue, the DEC failed to use its authority to force said owners to repair the dam (see ECL 15-0507, subd 2). Furthermore, and despite a subsequent inspection in April, 1975 which revealed that no remedial work had been performed, the department neither effected the repairs, nor undertook any subsequent inspections. Claimants maintain that had the DEC fulfilled its duty and caused the defective spillway to be repaired the instant flood situation which necessitated the breach of the dam could have been averted.
Again, the DEC’s duty to inspect dams is a general duty owed to the public (see ECL 15-0503, subd 3, par b; 15-0507). Having undertaken an inspection, the DEC was not required to effect or insure that repairs were performed.[2] (See Motyka v City of Amsterdam, 15 NY2d 134, supra; Sanchez v Village of Liberty, 42 NY2d 876.) Moreover, any failure to conduct further inspections cannot form the basis of liability, “there being no obligation on the part of the State to protect against damage to particular private interests, there would be no breach of duty as to inspection which could be actionable by these claimants” (Van Buskirk v State of New York, 38 AD2d 349, 352, supra).
IV. CONCLUSIONS
On the facts and law presented, we must conclude that claimants have failed to set forth a cause of action against the State and that said defendant cannot be held liable for any damages which resulted from the breach or disrepair of the subject dam. (See ECL 15-0701, subd 1; Matter of Allen v New York State Water Resources Comm., 59 Misc 2d 428, 429.)[3]
*278 In accordance with the above findings, we now grant the defendant’s motions to dismiss the subject claims.

. Claimant Sit ’N Bull Ranch and Country Club, Inc. (Sit ’N Bull) leases property on the Schroon River on which it operates a ranch resort. No claim is made that any *272 damage occurred to said property. In addition, however, Sit ’N Bull is the sole shareholder of 1000 Acres Ranch Resort Golf Club, Inc. (1000 Acres) which in turn owns a golf course on the Hudson River. Moreover, Sit’N Bull leases additional property on the Hudson River which is operated by 1000 Acres as a dude ranch and which in conjunction with the golf course forms the “1000 Acres Ranch Resort.” It is the “1000 Acres Ranch Resort” which has allegedly sustained damage.

. “The department shall have the power * * * to make and serve an order * * * directing any person * * * using any [dam] to * * * repair the same.” (ECL 15-0507, subd 2; emphasis added; cf. Taylor v State of New York, 302 NY 177, where the State constructed and owned the offending dam, and was required to operate and maintain the same in a safe condition.)

. ECL 15-0305, which gives the DEC the right of access over all lands for purposes related to waterway and dam inspections, provides for department liability “only for actual damage done by reason of any such entry, inspection, or investigation.” Hence while actual damages directly caused by DEC entry may be recovered, this statute is clearly not intended to abrogate the immunities discussed above and cannot be con *278 strued as creating a cause of action against the DEC for damages caused by private parties. (See Niagara Falls Power Co. v White, 292 NY 472, 479; see, also, Matter of Sperry Rand Corp. v Water Resources Comm., 30 AD2d 276, 279, supra; Motta v State of New York, Ct of Claims, Claim No. 59233, Mot No. M-17635, Sept. 26, 1975, Ford, J.)