OPINION OF THE COURT
Alexander, J.
The Commissioner of the Department of Environmental Conservation commenced this action to enforce his order requiring defendant Onondaga Landfill Systems, Inc. to prepare a plan containing certain conditions for the closure of, *359 and to then permanently close according to the plan, a sanitary landfill operated in the Town of Onondaga. The plan was to include, among other conditions, the establishment of a fund to provide for the possible replacement of a polyvinyl-chloride membrane to be placed over the site to seal it and to prevent water from seeping through the landfill, picking up contaminants, and thus polluting the groundwater. Supreme Court deleted that requirement from the closure plan, but the Appellate Division modified by reinstating the condition, finding it consistent with the Department’s regulations, supported by evidence in the record and reasonable under the circumstances. For the reasons that follow, we affirm the order of the Appellate Division.
In 1977, Onondaga Landfill Systems, Inc. (OLSI) began to operate a sanitary landfill and applied to the Department of Environmental Conservation (DEC) for permits to operate as a solid waste management facility. The DEC denied OLSI’s applications because the landfill failed to comply with DEC requirements set forth in 6 NYCRR part 360 and because the site’s natural characteristics were unsuited for solid waste disposal, its bedrock consisting of porous limestone through which rain and other surface water, after saturating the solid waste, would seep and contaminate the groundwater. Accordingly, the Commissioner ordered OLSI to submit a plan for closure of the landfill within 30 days and to terminate operations within 90 days from the date of the order. The Commissioner’s determination was confirmed (Onondaga Landfill Sys. v Flacke, 81 AD2d 1024). No closure plan was submitted, however; instead, OLSI continued to operate the landfill without a permit in defiance of the closure order.
The Commissioner thereafter commenced this action to compel OLSI to comply with the closure order (see, ECL 71-2727 [2]). Upon the Commissioner’s application, Supreme Court appointed a temporary receiver (see, CPLR 6401) who was directed to supervise the landfill operation and to submit to the court and the Commissioner a plan for closing down the landfill in compliance with DEC regulations (6 NYCRR part 360). The receiver was further authorized to monitor OLSI’s finances to insure that funds and assets were not diverted in an attempt to avoid the financial burden of effecting a proper closure, and to hire an engineering firm to assist in the preparation of a closure plan.
In June 1983, the engineering firm retained by the receiver *360 submitted a preliminary plan to DEC, that, as pertinent here, provided for the capping of the landfill with a 20-mil polyvinylchloride membrane (PVC) sandwiched between two 12-inch layers of soil to prevent the penetration of surface water through the refuse pile and the ultimate contamination of the groundwater. Although expressing a preference for a considerably thicker PVC, one of 30-mil, DEC found the closure plan generally acceptable. Nevertheless, DEC indicated that it would approve the plan only if it provided for a program to monitor the integrity of the cap over its guaranteed life of 20 years, and the creation of an interest-bearing sinking fund to finance postclosure monitoring and a new PVC cap should a replacement become necessary after expiration of the guaranteed life. In response, the engineering firm incorporated in the proposed plan a provision for the establishment of such an account in the amount of $710,000.
The receiver sought Supreme Court approval of the revised plan although, in doing so, he expressed the view that the initial 20-mil PVC cap would provide greater impermeability and protection of the site than required by DEC regulations, that the need for replacement of the cap was not demonstrated and that substantial doubt existed as to OLSI’s financial ability to comply with the sinking fund requirement. Moreover, the receiver, as did OLSI, questioned DEC’s authority to impose conditions on the closure plan after having invoked the court’s equity jurisdiction to effect closure.
Supreme Court determined that to the extent necessary to review DEC’s determination, it would consider the receiver’s motion as seeking article 78 review. Supreme Court rejected DEC’s contention that, based upon its expertise, because of the marginal thickness and limited design life of the PVC membrane, the unsuitable nature of the site as a landfill and the substantial danger of groundwater contamination, the replacement cap and sinking fund requirements were reasonable and necessary. The court found the perceived necessity for a replacement of the PVC membrane unsupported by the record, "predicated upon speculation or, at best, a guess” and in excess of DEC’s own minimum standards (see, 6 NYCRR 360.8). The court further found that OLSI lacked sufficient assets to finance a sinking fund, and that imposition of such a requirement not only would force premature and unsafe termination of the landfill, but under the circumstances, failed to accord "due regard to the economic and technological feasibil *361 ity” of compliance by the owner, citing ECL 27-0703 (1). Thus, the court concluded that imposition of the provisions for a replacement cap and sinking fund were arbitrary and capricious and therefore deleted them from the closure plan.* Finally, Supreme Court determined that although DEC commenced this action originally to enforce its closure order, enforcement of that order in accordance with its terms was no longer possible because of the lapse of time. Thus, DEC’s action of requesting that the landfill be placed under receivership and that the court maintain "continuing jurisdiction” until closure was interpreted as having invoked the equity jurisdiction of the court. Supreme Court concluded that, under these circumstances, DEC had relinquished its authority over the closure of OLSI and therefore could not impose conditions upon the court’s approval of the closure plan.
The Appellate Division modified the order of the Supreme Court by reimposing the condition that a fund be established to finance replacement of the PVC cap. The Appellate Division concluded that the DEC determination that a replacement for the PVC cap might be necessary and that the closure plan should contain a provision for such a replacement cap to be financed through creation of a sinking fund was fully supported by the record and was not arbitrary and capricious. Moreover, the court found that the regulations relating to closure set forth only minimal standards and expressly empowered the DEC to impose additional requirements (see, 6 NYCRR 360.8 [b] [1] [xxi]). Additionally, the Appellate Division found no support in the record for the lower court’s conclusion that OLSI lacked funds to finance a replacement cap, and that that court, in any event, incorrectly interpreted the provisions of ECL 27-0703. The Appellate Division also concluded that DEC had not relinquished jurisdiction over the final closure plan by acceding to the order by which Supreme Court assumed continuing jurisdiction and appointed a receiver. The Appellate Division was of the view, however, that even if Supreme Court had acquired concurrent jurisdiction with DEC, the doctrine of primary jurisdiction would have required that court to accede to the decision of the Commis *362 sioner and "stay its hand” in deference to the agency’s expertise.
We agree with the Appellate Division that DEC did not relinquish its jurisdiction over closure of the landfill by invoking the court’s jurisdiction. The doctrine of primary jurisdiction, however, is inapplicable here. The doctrine of primary jurisdiction provides that "[wjhere the courts and an administrative agency have concurrent jurisdiction over a dispute involving issues 'beyond the conventional experience of judges,’ * * * the court will 'stay its hand until the agency has, applied its expertise to the salient questions’ ” (Engelhardt v Consolidated Rail Corp., 756 F2d 1368, 1369, citing Far East Conference v United States 342 US 570, 574; and Hansen v Norfolk & W. Ry. Co., 689 F2d 707, 710; Capital Tel. Co. v Pattersonville Tel. Co., 56 NY2d 11, 22; see, Davis, Administrative Law, at 81-121). Application of the doctrine is intended to "co-ordinate the relationship between courts and administrative agencies to the end that divergence of opinion between them not render ineffective the statutes with which both are concerned, and to the extent that the matter before the court is within the agency’s specialized field, to make available to the court in reaching its judgment the agency’s view concerning not only the factual and technical issues involved but also the scope and meaning of the statute administered by the agency” (Capital Tel. Co. v Pattersonville Tel. Co., 56 NY2d 11, 22, supra).
Notwithstanding the plenary jurisdiction of the Supreme Court under our State Constitution (NY Const, art VI, § 7), the Supreme Court and the DEC do not have concurrent jurisdiction with respect to determining the conditions of closing down solid waste management facilities, and thus the doctrine of primary jurisdiction is inapplicable. The licensing and regulation of solid waste management facilities is a legislative function delegated to the DEC by statute (ECL 27-0103). ECL 27-0703 empowers the DEC to promulgate rules regulating the operation of such facilities pursuant to which the DEC has expressly provided, with respect to closure, that the owner or operator of a facility: "shall, upon permanent termination of use, properly close and maintain such facility so as to prevent adverse environmental or health impacts” (see, 6 NYCRR 360.8 [a] [21). The Commissioner of the DEC is further empowered to issue orders, such as the one sought to be enforced in this action, prohibiting violations of ECL article 27 and regulations promulgated pursuant thereto. Indeed, ECL 71-2727 (1) *363 specifically provides that the Commissioner may take "such remedial measures as may be necessary or appropriate” and expressly authorizes initiation of any appropriate action or proceeding to enforce the provisions of article 27, any rule or regulation promulgated pursuant thereto and any order -issued or penalty assessed thereunder (ECL 71-2727 [2]).
Certainly the Supreme Court is vested with jurisdiction to hear such actions (NY Const, art VI, § 7). Nevertheless, that DEC sought the aid of the court in enforcing its closure order by instituting an action under ECL 71-2727, as it is plainly authorized to do, did not divest the agency of its jurisdiction to carry out the legislative function entrusted to it of prescribing and approving specific measures for implementing closure of the landfill. Nor was Supreme Court, by virtue of having exercised its equity jurisdiction in appointing a receiver, empowered to substitute its judgment for that of the agency with respect to the conditions of the closure order. To hold otherwise would impermissibly restrain the DEC from performing its statutory duty in violation of fundamental principles of separation of powers (see, Matter of Public Serv. Commn. v Norton, 304 NY 522, 530).
Although Supreme Court correctly viewed this proceeding as a CPLR article 78 review of the Commissioner’s determination that certain conditions be imposed on OLSI’s closure plan, it nevertheless proceeded to substitute its judgment for that of DEC with respect to those conditions. Yet, it is settled that in a proceeding seeking judicial review of administrative action, the court may not substitute its judgment for that of the agency responsible for making the determination, but must ascertain only whether there is a rational basis for the decision or whether it is arbitrary and capricious (Matter of Warder v Board of Regents, 53 NY2d 186, 194). Moreover, where, as here, the judgment of the agency involves factual evaluations in the área of the agency’s expertise and is supported by the record, such judgment must be accorded great weight and judicial deference (Matter of Eastern Milk Producers Coop. Assn. v State Dept. of Agric. & Mkts., 58 NY2d 1097, 1101; Matter of Warder v Board of Regents, 53 NY2d 186, 194, supra; Matter of Burger King v State Tax Commn., 51 NY2d 614, 621; Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459).
The record in this case demonstrates that OLSI had operated its sanitary landfill without a license for seven years at a *364 site determined to be unsuited for solid waste disposal and continuously in violation of DEC regulations governing operation of such facilities. Thus, DEC appropriately determined that the risk of contamination from the OLSI facility was great and reasonably concluded that the PVC cap, which the record demonstrates would be the only reliable protection against contamination of the groundwater following closure of the landfill, must be highly impermeable and durable. There is support in the record for DEC’s determination, and it therefore cannot be said that the determination lacks a rational basis or is arbitrary and capricious. The Appellate Division so concluded, and therefore the order of that court must be affirmed.
Finally, we reject OLSI’s argument that ECL 27-0703 (1), which enjoins the DEC to "[a]dopt and promulgate * * * rules and regulations governing the operation of solid waste management facilities [with] due regard to the economic and technological feasibility of compliance therewith”, evinces a legislative intent not to impose undue economic hardship on landfill operators. The required "due regard to the economic and technological feasibility” applies only in respect to the promulgation of regulations governing the operation of all such facilities and may not be interpreted as requiring the DEC to take into account the financial ability of an individual operator in approving that operator’s closure plan. Such an interpretation would impermissibly limit the DEC’s authority to impose conditions upon a closure plan that will achieve the statutory purpose of "prevent(ing) adverse environmental or health impacts” (6 NYCRR 360.8 [a] [21]). Indeed, DEC is authorized to require that the operator of a solid waste management facility post a bond, in an amount to be set by the DEC, to ensure the financial responsibility of the facility before it is accorded a license to operate, (see, 6 NYCRR 360.6).
For the foregoing reasons, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.

Although it approved the 20-year postclosure monitoring provision of the closure plan and struck only the cap replacement requirements, Supreme Court deleted the provision for the entire $710,000 sinking fund. As reported by the Appellate Division, however, the parties subsequently agreed upon financing for the 20-year monitoring program, thus removing that issue from contention.