UNITED STATES of America, Plaintiff,

v.

Darrell L. FREEMAN, Jr., Defendant and Third–Party Plaintiff,

v.

William UHL, Jr.; William Uhl, III; State of New York; John Doe and Richard Roe, individually and as officers or agents of the New York State Police; Burroughs Corporation; Garlock Inc.; Clevepak Corporation; and XYZ Companies, Third–Party Defendants.

No. CIV–86–748E.

United States District Court, W.D. New York.

Feb. 25, 1988.

David L. Roach, Buffalo, N.Y., for defendant and third-party plaintiff.

E. Gail Suchman, Asst. Atty. Gen., Buffalo, N.Y., for third-party defendants.

## MEMORANDUM AND ORDER

ELFVIN, District Judge.

The present suit is brought by the United States of America ("the Government") to recover for its past expenditures incurred in and for the removal of hazardous substances from the property of the defendant and third-party plaintiff, Freeman. In the event the Government should prevail in its action, Freeman seeks indemnification and contribution from the State of New York and the other third-party defendants. The essence of Freeman's claim against New York is that, during the time it had control of his property from approximately July 22, 1982 until May 8, 1984—having declared said property a "crime scene"—, New York became an "operator" of the premises and through its employees acted in such a manner as to create the conditions which necessitated the Government's hazardous waste cleanup efforts. Both the Government and Freeman bring their claims pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980

("CERCLA"), 42 U.S.C. § 9601 *et seq.* Now before this Court is the motion by the third-party defendants New York, Doe and Roe to dismiss.

New York contends that the Eleventh Amendment to the United States Constitution prohibits Freeman from suing it in federal court and that therefore this Court lacks subject matter jurisdiction. It further contends that, even if this Court has such jurisdiction, Freeman's allegations of simple negligence fail to state a claim upon which relief can be granted inasmuch as section 107(d)(2) of CERCLA [1] holds a state liable when responding to an emergency situation only if the state engaged in gross negligence or intentional misconduct. It is further contended that Freeman's fourth cause of action against Doe and Roe in their personal capacities should be dismissed pursuant to Fed.R.Civ.P. rule 12(b)(6).

The Eleventh Amendment generally prohibits a private citizen from suing a state in federal court. It states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State". This has been interpreted to apply with equal vigor to suits brought by a defendant state's own citizens. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

A state may lose its constitutional immunity from suit in federal court in one of two ways. The first, an explicit waiver of immunity by the state, is not here presented. *See Petty v. Tennessee—Missouri Bridge Comm'n,* 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959). The second, which Freeman contends is applicable, requires that Congress clearly express an intent to condition a state's participation in a federally regulated area upon the state's waiver of its constitutional immunity. *See Employees v. Missouri Public Health Dept.,* 411 U.S. 279, 285, 93 S.Ct. 1614, 1618, 36 L.Ed.2d 251 (1973). "A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment. When Congress chooses to subject the States to federal jurisdiction, it must do so specifically." *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 246, 105 S.Ct. 3142, 3149, 87 L.Ed.2d 171 (1985). In addition to such clear expression of Congressional intent, there must be some action by the state sufficient to indicate that it has accepted the Congressionally-created condition.[2] Therefore, this Court's initial inquiry is whether Congress has explicitly evidenced an intent in CERCLA to require states to relinquish their constitutional immunity when they operate hazardous waste sites. This issue was squarely presented in *United States v. Union Gas Co.* (*"Union Gas I"*), 792 F.2d 372 (3d Cir.1986), *vacated and remanded,* —— U.S. ——, 107 S.Ct. 865, 93 L.Ed.2d 821 (1987). Therein it was observed that nowhere in CERCLA does Congress expressly state that it thereby intended to abrogate a state's constitutional immunity. However, following the lead from *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), and *Parden v. Terminal R. Co.* (*"Parden"*), 377 U.S. 184, 192, 84 S.Ct. 1207, 1213, 12 L.Ed.2d 233 (1964)[3] which accepted a less than explicit reference to the Eleventh Amendment as sufficient for its abrogation, the Court scrutinized the statute and its legislative history to determine whether, absent an express statement requiring abrogation, Congress might still have sufficiently indicated such an intent.

---

1. 42 U.S.C. § 9607(d)(2).

2. The state's consent would not be needed when Congress acts pursuant to its power to enforce the substantive provisions of the Fourteenth Amendment. *Welch v. State Dept. of Highways and Public Transp.,* —— U.S. ——, 107 S.Ct. 2941, 2946, 97 L.Ed.2d 389 (1987). CERCLA was enacted pursuant to the Commerce Clause.

3. Subsequent to the vacature of *Union Gas I,* the United States Supreme Court has determined that, to the extent it is inconsistent with the requirement that Eleventh Amendment immunity may be abrogated only where Congress has expressed such intent in clear and unmistakable language, *Parden* is overruled. *Welch v. State Dept. of Highways and Public Transp., supra,* at fn. 2.

■ Section 107(a) of CERCLA[4] allows those who have incurred clean-up costs to sue "any person" who owned or operated the waste site for reimbursement of costs involved in the clean-up effort. Section 101(21)[5] includes both the United States and the individual states within the definition of "person" and thus provides support for the proposition that Congress intended to facilitate suits against the states.

When the United States Supreme Court remanded *Union Gas I* to the United States Court of Appeals for the Third Circuit, it expressly directed reconsideration in light of the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), P.L. 99–499, which had been enacted after the appellate court's decision.[6] This vacature undermines neither the latter's reasoning nor the rationale of the cases upon which it relied. Essentially, the vacature requires this Court to perform the same function—namely, to determine whether SARA amended CERCLA in such a manner as to evidence a congressional intent to abrogate states' Eleventh Amendment immunity. The United States Court of Appeals for the Third Circuit concluded that it did. *U.S. v. Union Gas Co.* (*"Union Gas II"*), 832 F.2d 1343 (3rd Cir.1987).

Much of the basis for that Court's determination is provided by section 9601(20)(D):

"The term 'owner or operator' does not include a unit of State or local government which acquired ownership or control involuntarily through bankruptcy, tax delinquency, abandonment, or other circumstances in which the government involuntarily acquires title by virtue of its function as sovereign. The exclusion provided under this paragraph shall not apply to any State or local government which has caused or contributed to the release or threatened release of a hazardous substance from the facility, and such a State or local government shall be subject to the provisions of this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 9607 of this title."

Certainly, this language could be construed as evincing a congressional intent to treat states the same as private parties in all respects.

Section 9613(f) adds to CERCLA a specific confirmation of judicial precedents allowing parties held jointly and severally liable to seek contribution from other parties. The section states:

"(1) * * * [a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) * * *. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal Law. * * *"

Considering the inclusion of "State" within the definition of "person," section 9613(f) literally authorizes a private citizen to sue a state for contribution and to do so under federal law.

■ These additions strengthen Freeman's already plausible argument that New York may be liable to him pursuant to section 9607(a). If states were not amenable to suit, there would have been no need to limit their responsibility when ownership or control is acquired involuntarily. However, these sections might also be considered to apply only where a state is sued by the federal government,[7] or when it has expressly waived its immunity. Even if section 9607(a) is not read as an abrogation of the states' sovereign immunity, it is still of substantial importance "because it establishes a right of action *by the United States* against any states that own or operate hazardous waste sites." *Union Gas I, supra*, at 380.

Also significant is that amendment which supplements Title III of the act and autho-

---

**4.** 42 U.S.C. § 9607(a).

**5.** 42 U.S.C. § 9601(21).

**6.** —— U.S. ——, 107 S.Ct. 865, 93 L.Ed.2d 821 (1987).

**7.** The Eleventh Amendment does not prevent a state from being sued by the United States. *United States v. Mississippi*, 380 U.S. 128, 140, 85 S.Ct. 808, 814, 13 L.Ed.2d 717 (1965).

rizes private citizens to initiate suits against "any person" who violates a provision of CERCLA. 42 U.S.C. § 9659.[8] Where that person is the United States or "any other governmental instrumentality or agency" there is an express limitation that such actions will be recognized only "to the extent permitted by the eleventh amendment." *Id.* This may be perceived as an expression of a general Congressional intent relative to this statute to preserve the constitutional privilege afforded to the states. That same language however might likewise serve as the basis for an argument to the contrary. *See, Union Gas II, supra.* If the intent were to extend the Eleventh Amendment limitation to citizen suits for reimbursement as well as for compliance, Congress could easily have added to section 9607 the limiting language that appears in the new section 9659. Nevertheless, the mere fact that Congress did not conform the language of the reimbursement and the compliance sections does not necessarily signify a desire that they be treated dissimilarly. As Judge Higginbotham noted in his dissent in *Union Gas I*, "[l]egislators do not have the time or the capacity to anticipate every possible argument that might be made subsequently by creative and clever counsel." *Id.* at 386.

Congressional abrogation of a state's sovereign immunity will be found only in the most unequivocal language. "We * * * affirm that Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." *Atascadero State Hospital v. Scanlon, supra,* at 242, 105 S.Ct. at 3147; *Welch v. State Dept. of Highways and Public Transp., supra,* at fn. 2. If CERCLA as amended by SARA were susceptible of more than one interpretation we would be compelled to resolve the issue in favor of preserving New York's recognized privilege. However, in the ab-sence of unmistakably clear statutory language, the legislative history of SARA may be consulted concerning the resolution *vel non* of such seeming susceptibility. *See Hutto v. Finney, supra,* at 698 fn. 31, 98 S.Ct. at 2577–78 fn. 31.

As first enacted, section 101 of CERCLA[9] defined "owner or operator," as it applies to New York in this action, only as a person owning or operating an onshore facility. The Senate's proposed amendment sought to exclude states that acquire ownership or control involuntarily. The amendment was adopted, but not without further modification. Essentially, the exclusion would not apply if the state had contributed to release of the hazardous waste. In that case, a state would be subject to all the procedural and substantive provisions of CERCLA, just as any non-governmental entity would be, including liability for reimbursement pursuant to section 107. 1986 U.S.Code Cong. & Admin.News 2835, 3279. It is Freeman's contention that the carelessness of New York employees caused the spill, and he seeks contribution or indemnity pursuant to section 107. To conclude that Congress did not intend to abrogate the states' immunity to suit under such circumstances would require a contortion of the language and legislative history of section 101(20)(D).

■ Having so concluded, it remains to be determined whether Congress has the power to revoke unilaterally the states' Eleventh Amendment privilege by virtue of its authority under the Commerce Clause.[10] This Court opines that such power is not vested in the national legislature, although well-reasoned arguments exist to the contrary. *See, Union Gas II, supra.*

The United States Supreme Court has reserved decision on the issue. *County of Oneida v. Oneida Indian Nation,* 470 U.S. 226, 252, 105 S.Ct. 1245, 1261, 84 L.Ed.2d 169 (1985). However, any pronouncement that Congress possesses the ability to cre-

---

**8.** Originally CERCLA granted standing only to private citizens who had incurred costs associated with cleaning up hazardous substances or who had been damaged by their release. 42 U.S.C. § 9607.

**9.** 42 U.S.C. § 9601(20).

**10.** U.S. Const., art. I, § 8, cl. 3.

ate causes of action that would subject a state to private suit in a federal court by virtue of Congress's Article I power to regulate interstate commerce would be a new interpretation of constitutional law. The first instance wherein the highest court allowed for "congressional interference and compulsion" in a case "embraced within the Fourteenth Amendment" denied at the same time that the federal government could punish the states simply for their refusal to perform some duty required by an act of Congress. *Ex Parte Virginia*, 100 U.S. (10 Otto) 339, 347–348, 25 L.Ed. 676 (1879). Congress's express authority under the Fourteenth Amendment is unique and, when acting pursuant to it, Congress does not impermissibly invade state sovereignty. It was recognized as a "limited authority * * * extending to a single class of cases * * *." *Id.* at 348.

In 1976 the precise issue whether the Fourteenth Amendment could authorize federal legislation to provide for private suits against a state was explored. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). It was there held that Congress may unilaterally subject a state to private federal suit when it acts to enforce the substantive provisions of the Fourteenth Amendment. The Court's reasoning and decision in that case are clearly limited to suits involving laws enacted pursuant to section 5 of the Fourteenth Amendment. It is expressly noted that these suits against states or their officials, though allowed by virtue of section 5, would be "constitutionally impermissible in other contexts." *Id.* at 456, 96 S.Ct. at 2671.

In spite of having reserved the question of the full extent of Congress's power vis-a-vis the Eleventh Amendment, when recounting the established law on the subject the United States Supreme Court has carefully maintained that a state may be subject to suit despite its constitutional immu-

nity in one of two ways—*viz.*, it may (as noted earlier) expressly waive its immunity, or Congress may abrogate the immunity without the state's consent when Congress acts pursuant to section 5 of the Fourteenth Amendment. *Atascadero State Hospital v. Scanlon, supra,* at 238, 105 S.Ct. at 3145.[11] *See also, Minotti v. Lensink,* 798 F.2d 607, 609 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 2484, 96 L.Ed.2d 376 (1987).

■ An earlier decision by the United States Court of Appeals for the Second Circuit, cited in *Union Gas II*, did not limit Congress's ability to abrogate a state's immunity to those occasions when it was acting pursuant to the Fourteenth Amendment. *County of Monroe v. State of Fla.* (*"County of Monroe"*), 678 F.2d 1124, 1133 (2nd Cir.1982), *cert. denied,* 459 U.S. 1104, 103 S.Ct. 726, 74 L.Ed.2d 951 (1983). It was concluded therein that the action pursuant to the Federal Extradition Act, 18 U.S.C. § 3195, was not barred by the Eleventh Amendment. In many significant ways, that case is distinguishable from the present one. The cost involved with the extradition of fugitives is relatively small, with the result that the infringement of a state's sovereignty should it have to endure suits and be made to pay these sums would be "minimal." *County of Monroe, supra,* at 1135. The amounts involved in the cleanup of a contaminated waste site could be and usually are substantial. Florida was given a free choice whether it wished to accept the benefits of the Extradition Act and was on notice that, if it did so accept, it would be liable for certain costs. New York's choice between exercising its police powers and protecting itself from liability was "no true choice at all." *See, Employees v. Missouri Public Health Dept., supra,* at 296, 93 S.Ct. at 1624.[12] It was noted that, if the plaintiff in *County of Monroe* could not sue Florida, section 3195

---

11. Justice Brennan in his dissent speculates that express Congressional abrogation may "perhaps [be] pursuant to other Congressional powers" in addition to the Civil War Amendments. *Atascadero State Hospital v. Scanlon, supra,* at 253, 105 S.Ct. at 3153.

12. Furthermore, during the time New York was present at the site, CERCLA had not yet been amended by SARA. Without those amendments, the required unequivocal intent to abrogate was not contained in the language of the statute.

would be "virtually meaningless." *Id.* at 1134. The Federal Extradition Act, unlike CERCLA, historically focused directly on the question of state liability. The inability of a private citizen to sue a state would not render CERCLA meaningless because Freeman's action may be pursued against the state in the New York State Court of Claims and because of the federal government's ability to maintain an action against it. *See, Employees v. Missouri Public Health Dept.*, *supra*, at 285–286, 93 S.Ct. at 1618–1619. Although the Court had no doubt that Congress could abrogate a state's immunity when acting pursuant to Article IV, § 2, cl. 2 of the Constitution, it acknowledged its uncertainty regarding the extent of Congress's powers when it acted pursuant to powers delegated by Article I, and expressly declined to reach that issue. *County of Monroe, supra,* at 1132, fn. 8.

■ This Court determines that there is insufficient authority upon which to justify a denial of the state's motion. To permit this action to continue against New York would sanction an extension of the law as it relates to sovereign immunity which extension is not recognized in this circuit and which would be in disharmony with the line of cases wherein the Eleventh Amendment issue turned on both of the questions whether Congress intended to abrogate immunity and whether a state by its participation had consented to it. *Atascadero State Hospital v. Scanlon, supra*, at 246–247, 105 S.Ct. at 3149–3150; *Edelman v. Jordan,* 415 U.S. 651, 672, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662 (1974). This Court is not persuaded that it should attempt to diminish the "compelling force" of the explicit limitation on federal judicial power which has been declared by the Eleventh Amendment. *Ford Co. v. Dept. of Treasury,* 323 U.S. 459, 467, 65 S.Ct. 347, 352, 89 L.Ed. 389 (1945).

Therefore, allowing that CERCLA (as amended by SARA) is designed to condition the states' involvement in the operation of hazardous waste sites upon a waiver of Eleventh Amendment immunity but deciding that Congress may not thereby unilaterally abrogate that immunity, two questions still remain to be answered. First, upon the facts of the present case, has New York State become an "owner or operator" as those terms are used in CERCLA? Secondly, if New York has become an owner or operator, did it thereby waive its Eleventh Amendment immunity? It is clear that New York did not become the owner of the plaintiff's land when it declared said land a crime scene. The plaintiff's contention that New York was "operating" a hazardous waste facility during the period of time it had possession of his land is questionable. While the statute does not resolve the question whether possession by the police can be equated to functioning as an operator, the plaintiff strains the normal meaning when he seeks to classify New York's action here as the operation of a hazardous waste site. According to the Third–Party Complaint, New York through its agents secured the site with a barrier and posted signs declaring it to be a crime scene. It opened various drums and, due to its failure to close them properly, allowed some of their contents to escape. The contents of the drums are not described. It was the Government which, subsequent to the relinquishment of the site by New York, performed the actual clean-up operation. Nevertheless, because this is a motion on the pleadings and it can not be said that no set of facts could support Freeman's allegation that New York was an operator of the site within the meaning of CERCLA, we will assume New York to have been an operator for purposes of this motion only.

Even on such an assumption New York would not be found to have accepted Congress's condition in such a manner as to constitute a waiver of the Constitutional immunity. In *Parden*, wherein a state was held to have impliedly waived its privilege, the Court noted that the state began its participation in the regulated field voluntarily and twenty years after Congress had expressed its intent to abrogate states' immunity. 377 U.S. at 192, 84 S.Ct. at 1212–1213. In *Employees v. Missouri Public Health Dept., supra,* wherein the Court found that immunity had not been waived, it was stated that "the concept of implied con-

sent or waiver relied upon in *Parden* approaches * * * the outer limit of the sort of voluntary choice which we generally associate with the concept of constitutional waiver." 411 U.S. at 296, 93 S.Ct. at 1624 (Marshall, J., concurring in result). That statement, as well as the reasoning that followed it, is particularly apposite to the present controversy. "Certainly, the concept [of implied waiver] cannot be stretched sufficiently further to encompass this case. Here the State was fully engaged in [operating hospitals and schools] at the time of the 1966 Amendments. To suggest that the State had the choice of either ceasing operation of these vital public services or 'consenting' to federal suit suffices, I believe, to demonstrate that the State had no true choice at all and thereby that the State did not voluntarily consent to the exercise of federal jurisdiction in this case." *Ibid.* It cannot be maintained that New York voluntarily indicated an amenability to federal suit when it took what it believed to be necessary police action. This is especially clear in this case where New York's actions at the site ended two years before the passage of SARA.

■ With regard to Freeman's claim against Roe and Doe as individuals, he has done no more than reiterate that which was claimed in the third cause of action which is directed against New York. He fails to allege any acts in which Roe and Doe have engaged beyond the scope of their official capacities as agents of New York and, therefore, no valid claim has been framed with regard to them.

Accordingly, it is hereby ORDERED that these third-party defendants' motions to dismiss are granted.