STATE OF NEW YORK, Plaintiff,

v.

CITY OF JOHNSTOWN, N.Y., et al., Defendants.

STATE OF NEW YORK, Plaintiff,

v.

CITY OF GLOVERSVILLE, N.Y., et al., Defendants.

Nos. 87–CV–636, 87–CV–637.

United States District Court, N.D. New York.

Dec. 13, 1988.

---

Lowenstein, Sandler, Brochin, Kohl, Fisher & Boylan, Roseland, N.J., for defendants Milligan & Higgins, Corp.; Norman W. Spindel, of counsel.

## MEMORANDUM–DECISION AND ORDER

CHOLAKIS, District Judge.

These are actions brought by the State of New York pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.* (1982), *as amended by* the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub.L. No. 99–499, 100 Stat. 1613 (1986), and New York's common law of nuisance and restitution. The State seeks to abate and remedy the release or threatened release of hazardous substances at two solid waste management facilities and recover response costs and damages for harm caused to natural resources. While both facilities are located in the Town of Johnstown, one is owned and operated by the City of Gloversville, and the other by the City of Johnstown. The State alleges that hazardous substances, as defined in 42 U.S.C. § 9601(14), are contaminating the sites, endangering nearby wells, waterways, and wildlife. The State has sued the cities of Gloversville and Johnstown, the respective owners and operators of the sites, as described in 42 U.S.C. §§ 9607(a)(1) and (2). In addition, the State has sued waste generators, as described in § 9607(a)(3), who include corporations involved in producing tannery wastes and/or finishing wastes and/or paint wastes. Defendant Milligan & Higgins, a division of Hudson Industries Corporation, is in the business of making glues from tannery wastes, and is alleged to have deposited hazardous substances at the *Johnstown* site until 1979 or 1980, and at the *Gloversville* site thereafter.

Since 1979 or 1980, the *Johnstown* site has been a sanitary landfill, in that it no longer accepts hazardous substances.[1] At

Robert Abrams, Atty. Gen., State of N.Y., Dept. of Law, Albany, N.Y., for plaintiff; John J. Privitera, Asst. Atty. Gen., of counsel.

---

1. "Sanitary landfill" is defined as "a land disposal site employing an engineering method of disposing of solid wastes on land in a manner that minimizes environmental hazards and meets the design and operation requirements of [Part 360]." 6 NYCRR § 360.1(63). Sanitary land-

that time, the State apparently directed certain depositors to dispose of their wastes at one or the other of the two sites. Since defendant was alleged to be a depositor of hazardous substances, it was directed to dispose of these substances at the *Gloversville* site.[2] Pursuant to an August 13, 1986 agreement between the State and Gloversville (Exhibit D of plaintiff's motion papers), that site is to be closed by September 1, 1990, as a new solid waste management facility at a different site in Fulton County ("Mud Road facility") has received a permit from the New York State Department of Environmental Conservation ("DEC"). The agreement requires that the landfill be maintained pursuant to certain sections of 6 NYCRR Part 360. "[T]he purpose of [these regulations] ... shall be to regulate solid waste management facilities ... located partially or wholly within ... the State." 6 NYCRR § 360.1. The State, however, did not issue a permit to Gloversville to continue operations at the site, a requirement under 6 NYCRR § 360.2(b).

The State and Johnstown entered into an interim consent order filed with the Court on October 3, 1988 (Exhibit A of defendant's opposing papers), whereby Johnstown agreed to close that site by June 1, 1990, or within thirty days of the date the Mud Road facility may accept refuse, whichever is sooner. While Johnstown agreed to maintain the landfill pursuant to 6 NYCRR Part 360, the State likewise did not issue a permit for the site's continued operation. Both the *Gloversville* and *Johnstown* sites, then, have been operating "permitless" since the State first acted in this matter.

In both cases, defendant has counterclaimed against the State, claiming that the State violated its own regulations by failing to properly regulate the sites, as evidenced by the State's failure to require or issue permits for their continued operation. Defendant claims that the State "negligently, intentionally and knowingly" failed to

properly regulate the landfills after it first became aware of the hazardous waste problems therein. Defendant makes the following three requests in its counterclaims: (1) indemnification or contribution from the State for any judgment that may be had against it, pursuant to CERCLA § 113(f)(1), 42 U.S.C. § 9613(f)(1); (2) state common law indemnification or contribution; and (3) an injunction against the State forcing it to comply with 6 NYCRR § 360.2(b) and issue valid permits for operation, remediation and closure of the sites. The State now moves the Court to dismiss defendant's counterclaims pursuant to Fed. R.Civ.P. 12(b)(1) or (6), arguing first, that it is not a "person" for indemnification or contribution purposes under 42 U.S.C. § 9613(f)(1), second, that it is immune from the common law contribution or indemnification action by the doctrine of sovereign immunity, and at any rate, its decisions with respect to the sites are "discretionary acts," and lastly, that the State cannot be forced to abide by its regulations.

## I.
## CONTRIBUTION/INDEMNIFICATION UNDER CERCLA

Section 9613(f)(1) of Title 42 of the United States Code provides "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 107(a) [42 U.S.C. § 9607(a)], during or following any civil action under section 106 [42 U.S.C. § 9606] or under section 107(a)." In order for the State to be liable under § 9607(a), the State must be either

(1) the owner and operator of a vessel or a facility;

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of;

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treat-

---

fills have been included in the definition of "solid waste management facility." 6 NYCRR § 360.1(69).

**2.** This information was obtained by the Court at oral argument on this motion on November 18, 1988. The Court has not been informed as to the specifics of the State's actions in this matter.

ment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances; [or]

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance ...

Defendant claims that the State is a responsible party under § 9607(a)(3), arguing that the State "otherwise arranged for" disposal of hazardous substances, in that the State either permitted or directed waste to be placed in the facilities. To establish liability under § 9607(a)(3), it must be shown, *inter alia*, that the State *owned* or *possessed* the hazardous substances of which it arranged to dispose. *C. Greene Equipment Corp. v. Electron Corp.*, 697 F.Supp. 983, 986 (N.D.Ill.1988); *United States v. Ward*, 618 F.Supp. 884, 893 (E.D. N.C.1985). Defendant cites *United States v. A & F Materials Company, Inc.*, 582 F.Supp. 842, 845 (S.D.Ill.1984) as authority for its claim that the term "otherwise arranged for," broadly construed, would include the State. In *A & F*, the party who arranged for disposal of hazardous waste was also the generator of the hazardous waste. The Court held that

Given the scope of the language "otherwise arranged" in § 9607(a)(3), the relevant inquiry is *who decided* to place the waste into the hands of a particular facility that contains hazardous wastes. In this case, it was MDC who decided to place its hazardous waste into the hands of A & F Materials to be used and disposed of at A & F's Greenup site. The Court finds that it is precisely this decision that CERCLA was intended to regulate ...

Thus, liability for release is not endless; it ends with that party who both owned the hazardous waste and made the crucial decision how it would be disposed of or treated, and by whom.

*A & F*, 582 F.Supp. at 845. (Emphasis in the original).

Defendant emphasizes that it is the party who decides to transfer substances that should be liable. *See United States v. Northeastern Pharmaceutical and Chemical Company,* ("*NEPACCO*"), 810 F.2d 726, 743 (8th Cir.1986), *cert. denied,* — U.S. ——, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987). Defendant argues that the responsible party need not be the owner or possessor of the hazardous substances. *United States v. Bliss,* 667 F.Supp. 1298, 1306–7 (E.D.Mo.1987); *United States v. Mottolo,* 629 F.Supp. 56, 60 (D.N.H.1984). In all the cases cited by defendant, the responsible party was either an officer or plant supervisor of a waste-producing corporation or a hired third party who decided how to dispose of its own waste. *NEPACCO,* 810 F.2d at 742; *Bliss,* 667 F.Supp. at 1306–7; *Mottolo,* 629 F.Supp. at 60; *Ward,* 618 F.Supp. at 894. These parties were held to be individually liable for having arranged for the disposal of hazardous substances or wastes.

The above situations are much different from the one before the Court. The cases clearly show that there has to be some nexus between the allegedly responsible person and the owner of the hazardous substances before a party can be held liable under 42 U.S.C. § 9607(a)(3). *See Edward Hines Lumber Company v. Vulcan Materials Company,* 685 F.Supp. 651, 656 (N.D. Ill.1988); *Jersey City Redevelopment Authority v. PPG Industries,* 655 F.Supp. 1257, 1260 (D.N.J.1987); *United States v. Conservation Chemical Company,* 619 F.Supp. 162, 241 (W.D.Mo.1985); *State of New York v. General Electric Company,* 592 F.Supp. 291, 297 (N.D.N.Y.1984). There is no such nexus between the State and defendant here. The State was attempting to remediate the hazardous waste problems at both sites and cannot be considered in the class of liable parties along with Milligan & Higgins. The Court holds that the State of New York in this instance is not a person subject to the CERCLA contribution provision, 42 U.S.C. § 9613(f)(1). The State's motion to dismiss

defendant's first counterclaim is hereby granted.

## II. COMMON LAW CONTRIBUTION/INDEMNIFICATION

■ It appears as though defendant's counterclaim is a "compulsory" or "defensive" counterclaim, as it arises out of the same transaction or occurrence as the underlying claim. Fed.R.Civ.P. 13(a). While the State argues that it is not subject to a counterclaim of any sort under the doctrine of sovereign immunity, compulsory counterclaims such as this one can be asserted against a sovereign. *United States v. Nicolet, Inc.*, No. 85–3060, slip op. (E.D.Pa. December 31, 1986) [available on WEST-LAW, 1986 WL 15017]; *United States v. Mottolo*, 605 F.Supp. 898, 910 (D.N.H.1985) (*"Mottolo II"*). In the present case, the State has brought the CERCLA action against defendant. While there is some dispute as to whether a State can be a third party defendant in a CERCLA action, *United States v. Union Gas Company*, 832 F.2d 1343, 1347 (3d Cir.1987), *cert. granted sub nom. Pennsylvania v. Union Gas Company*, —— U.S. ——, 108 S.Ct. 1219, 99 L.Ed.2d 420 (1988) (the State can be a third party defendant), *United States v. Freeman*, 680 F.Supp. 73, 79 (W.D.N.Y.1988) (rejecting *Union Gas*), there is no dispute that the State waives its sovereign immunity with respect to compulsory counterclaims when it is the plaintiff in a CERCLA action.

■ While the State has waived its immunity from suit with respect to this counterclaim, the State does not waive any defenses it may raise against the counterclaim. The State argues that defendant's claim is improperly brought as a claim for contribution/indemnification. The Court agrees. It appears as though defendant has mislabeled its second counterclaim. "A claim for contribution exists only when two or more tort-feasors share in responsibility for an injury in violation of duties they respectively owed to the injured person." *Smith v. Sapienza*, 52 N.Y.2d 82, 87, 436 N.Y.S.2d 236, 238, 417 N.E.2d 530, 532 (1981). "If there is no duty as between

the two to prevent injury to the injured victim, then there can be no right of indemnity by one from the other." *Smith v. Hooker Chemical & Plastics Corp.*, 83 A.D.2d 199, 443 N.Y.S.2d 922, 924 (4th Dept.1981). The situation in which the State and defendant are joint tortfeasors is difficult to imagine, and the contribution/indemnification issue seems untenable. It is more likely that defendant is looking for a setoff or recoupment to be applied against any amount it may eventually have to pay the State.

While sovereign immunity may not preclude a compulsory counterclaim, it may bar the claim when the acts causing the claim are "discretionary" or "quasi-judicial" acts of the State. *Tango by Tango v. Tulevich*, 61 N.Y.2d 34, 40, 471 N.Y.S.2d 73, 76, 459 N.E.2d 182, 185 (1983); *Arteaga v. State*, 125 A.D.2d 916, 510 N.Y.S.2d 280, 281 (3d Dept.1986); *Sweet v. State*, 114 Misc.2d 269, 451 N.Y.S.2d 565, 568 (Ct.Cl. 1982). If it cannot be shown that the State owed a "special duty" to a claimant, that claimant cannot recover against the State for alleged negligent acts. *Shinder v. State of New York*, 62 N.Y.2d 945, 946, 479 N.Y.S.2d 189, 468 N.E.2d 27 (1984). While the State concedes that it owes a general duty to protect the public, it argues that it owes no such duty to defendant. Apparently, this duty, if it exists at all, is not to further the damage to the sites by not adequately supervising or requiring permits for their continued operation. At oral argument on this motion, defendants argued that the State was under a duty not to "lay a trap" for defendant whereby the State would encourage conduct around which it would later frame a lawsuit.

The State decided some time ago to allow the sites to continue operating as solid waste management facilities, but did not enforce the requirement that permits be obtained. It appears that the parties agreed that the cities would operate the sites in accord with 6 NYCRR Part 360.8, which is a requirement under the permit application procedures. 6 NYCRR § 360.3(b)(2). The question of why the State did not require permits in this case

appears to be one that questions the judgment or discretion of the DEC Commissioner. The Commissioner has the authority to modify regulations issued pursuant to Articles 27 and 71 of the N.Y. Environmental Conservation Law, and to take remedial measures as may be necessary. N.Y. Environmental Conservation Law § 71–2727(1) (McKinney Supp.1988). In this instance, the Commissioner chose not to enforce a regulation in an effort to take remedial measures at both sites.

When it appears as though the judgment of the agency is at issue, it is not the province of the Court to substitute its judgment for that of the agency. *Flacke v. Onondaga Landfill Systems, Inc.*, 69 N.Y. 2d 355, 362, 514 N.Y.S.2d 689, 693, 507 N.E.2d 282, 286 (1987). Absent a special duty owed to defendant, no liability should be imposed upon the State for its alleged failure to enforce its regulations. *See O'Connor v. City of New York*, 58 N.Y.2d 184, 189, 460 N.Y.S.2d 485, 486, 447 N.E.2d 33, 34 (1983). It would appear that the decisions made concerning the sites required the exercise of judgment beyond that of a "ministerial application" of a regulation. *Tango by Tango*, 471 N.Y.S.2d at 77, 459 N.E.2d at 186.

Defendant relies quite heavily on *Mottolo II* as support for its contention that the State may not raise the defense of the "discretionary act" doctrine. However, *Mottolo II* does not address this issue. In *Mottolo II*, both the United States and the State of New Hampshire brought cost recovery actions under CERCLA. The Court allowed a counterclaim seeking recoupment against New Hampshire for additional costs expended by the State resulting from its alleged inadequate supervision of cleanup operations. *Mottolo II*, 605 F.Supp. at 910. The Court refused to allow a counterclaim seeking indemnity and contribution from New Hampshire for similar expenses incurred by the United States, finding this counterclaim to be barred by the doctrine of sovereign immunity. *Id.* at 911.

■ It would appear as though, based on the holding in *Mottolo II*, that defendants *may* be able to assert a claim for recoupment against the State, subject to whatever defenses the State may raise, including the "discretionary act" doctrine. At this time, it would be premature to decide whether such a claim (or the alleged defenses to it) would have merit, because the Court does not know what the State specifically did in 1979 or 1980, so as to assume a specific duty to defendant. Furthermore, it is not known whether the alleged negligent acts of the State have increased response costs to defendant's detriment. While the Court dismisses defendant's second counterclaim as it improperly seeks contribution or indemnification, such dismissal is without prejudice to the defendant's right to seek recoupment at a later time. The State's motion to dismiss is hereby granted.

## III. INJUNCTION

■ Defendant requests the Court to order the State to issue permits for the facilities in question. As mentioned above, it appears as though the decision to enforce a regulation rests within the discretion of the Commissioner of DEC. Since the Court cannot supplant DEC's judgment with its own, the Court cannot compel the State to act in an area where it is allowed to exercise its discretion. *See Flacke*, 514 N.Y.S. 2d at 693, 507 N.E.2d at 286. While the State *may* wind up paying some form of recoupment to defendant as a result of its decision, the decision whether to issue the permits is a matter best left within the province of the DEC. The State's motion to dismiss defendant's third counterclaim is granted.

After a thorough review of all materials in this matter, it is hereby

ORDERED, that the State's motion to dismiss defendant's counterclaims is granted;

ORDERED, that defendant's second counterclaim is dismissed without prejudice to its right to seek recoupment from the State.