**UNITED STATES of America, State of California, ex rel., Department of Fish and Game, State Lands Commission, and Department of Parks and Recreation, Plaintiffs,**

v.

**MONTROSE CHEMICAL CORPORATION OF CALIFORNIA, Rhone–Poulenc Basic Chemicals Company, Atkemix Thirty–Seven, Inc., Stauffer Management Company, ICI American Holdings, Inc., Chris–Craft Industries, Inc., Westinghouse Electric Corporation, Potlatch Corporation, Simpson Paper Company, and County Sanitation District No. 2 of Los Angeles, Defendants.**

Montrose Chemical Corporation of California, Rhone–Poulenc Basic Chemicals Company, Atkemix Thirty–Seven, Inc., Stauffer Management Company, ICI American Holdings, Inc., Chris–Craft Industries, Inc., Westinghouse Electric Corporation, Potlatch Corporation, Simpson Paper Company, and County Sanitation District No. 2 of Los Angeles, Counterclaimants,

United States of America, State of California, and South Coast Air Quality Management District, Counterdefendants.

No. CV 90–3122–AAH.

United States District Court,
C.D. California.

March 31, 1992.

Gerald F. George, Dept. of Justice, Environmental Enforcement Section, Environment and Natural Resources Div., United States Dept. of Justice, San Francisco, Cal., Adam M. Kushner, Scott A. Schachter, Christina M. Humway, Dept. of Justice, Environmental Enforcement Section, Environment and Natural Resources Div., United States Dept. of Justice, Washington D.C., for U.S.

Peter Hsiao, Asst. U.S. Atty., Civil Div., U.S. Attys. Office, C.D. Cal., John A. Saurenman, Barbara Noble, Deputy Atty. Gen., Los Angeles, Cal., for State of Cal.

Mark I. Weinberger, Shute, Mihaly & Weinberger, San Francisco, Cal., Robert Kwong, Senior Deputy, Deputy District Counsel, South Coast Air Quality Management Dist., Diamond Bar, Cal., for South Coast Air Management Dist.

Paul B. Galvani, Ropes & Gray, Boston, Mass., Christopher J. McNevin, Pillsbury Madison & Sutro, Los Angeles, Cal., for Rhone–Poulenc Basic Chemicals Co., Atkemix Thirty–Seven, Inc., Stauffer Mgmt. Co., and ICI Holdings, Inc.

Jose R. Allen, Peter Simshauser, Skadden, Arps, Slate, Meagher & Flom, San Francisco, Cal., for Chris–Craft Industries, Inc.

Robert M. Dell, Kimberly M. McCormick, Latham & Watkins, San Francisco, Cal., for Montrose Chemical Corp. of California.

Charles B. Cohler, Lasky, Haas, Cohler & Munter, San Francisco, Cal., for Westinghouse Elec. Corp.

## DECISION AND ORDER RE: MOTIONS TO DISMISS COUNTERCLAIMS

HAUK, Senior District Judge.

These are actions by the United States of America and the State of California against Defendants under the Comprehensive Environmental Response, Compensation and Li-

ability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.* (1982), as amended by Superfund Amendments And Reauthorization Act of 1986 ("SARA"), Pub.L. No. 99–499, 100 Stat. 1613 (1986). Both the United States and the State of California seek to recover natural resource damages and response costs pursuant to CERCLA sections 107(f), 42 U.S.C. § 9607(f) and 107(a)(4)(C), 42 U.S.C. § 9607(a)(4)(C) from all ten defendants for the alleged contamination of the "San Pedro Channel Areas," including the Palos Verdes Shelf, the Los Angeles–Long Beach Harbors and the environs of Santa Catalina Island and the Channel Islands, and destruction of wildlife and other natural resources therein. In addition, the United States seeks to recover response costs pursuant to CERCLA section 107(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A) from Montrose, Rhone–Poulenc, Atkemix, Stauffer, ICI and Chris–Craft ("DDT Defendants") for the cleanup of a commercial site allegedly contaminated with hazardous substances.

In turn, the Defendants have counterclaimed against the United States, the State of California and South Coast Air Quality Management District ("South Coast") under both CERCLA and tort law, seeking indemnity, recoupment, injunctive relief, declaratory relief, attorney's fees and costs. The thrust of Defendants' counterclaims is that if in fact hazardous conditions have been created and natural resources have been damaged, and if Defendants are held liable for response costs and damages, then the United States and the State of California should be required to make contribution under CERCLA section 113(f)(1), 42 U.S.C. § 9613(f)(1), and/or indemnify[1] Defendants under tort law. In this way, Defendants seek to deflect potential liability onto the United States and California, whom Defendants claim are the entities entirely or primarily responsible, in whole or in part, for the damage to the environment.

The case came on for hearing before the Court on March 16, 1992 on Counterdefen-

dants United States, State of California and South Coast's Motions for Dismissal of Defendants'/Counterclaimants' (Montrose, Rhone–Poulenc, Atkemix, Stauffer, ICI, and Chris–Craft, and Westinghouse) counterclaims. The Court has considered the motions and supporting papers, the opposition thereto, the moving parties' replies, together with all the files and records herein, and the legal arguments asserted by the parties at the hearing. In considering the motions to dismiss made under Federal Rule of Civil Procedure 12(b), the Court follows the rule that all facts are to be construed in the light most favorable to the counterclaimants, with dismissal to be ordered only if counterclaimants could prove no set of facts in support of their counterclaims which would entitle them to relief. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

## I. UNITED STATES' MOTION TO DISMISS

Plaintiff United States moves to dismiss DDT Defendants' tort based counterclaims seeking recoupment and indemnity pursuant to Federal Rule of Civil Procedure 12(b)(1).

### a. *Tort Counterclaims*

#### 1. Sovereign Immunity

■ The Government first argues that the Court lacks jurisdiction over the counterclaims because of the United States' sovereign immunity. If the Court were persuaded by this argument, the result would be to allow the United States to hale the Defendants into court and avail itself of this forum's powers, while barring the Defendants from seeking full recourse against the United States. This result would be manifestly unjust and is not supported by the law.

The United States waived its sovereign immunity, as to Defendants' counterclaims seeking recoupment, by filing its complaint with the Court. *See United States v. 2,116*

---

**1.** There is some confusion as to whether Defendants seek indemnity or direct damages. However, because Defendants have not stated a di-

rect claim for damages, their counterclaims will be construed as claims for indemnity and recoupment.

*Boxes of Boned Beef,* 726 F.2d 1481, 1490 (10th Cir.1984) ("[a]lthough the sovereign waives immunity as to claims of the defendant which are asserted in recoupment, it does not waive immunity as to claims of a different form or nature than that sought by it."), *cert. denied,* 469 U.S. 825, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984).

■ Furthermore, the Federal Tort Claims Act, 28 U.S.C. § 1346(b), 2671 *et seq.* (1965, 1976, and 1991 Supp.) ("F.T.C.A.") waives the United States' immunity as to claims seeking indemnity.[2] *United States v. Yellow Cab Co.,* 340 U.S. 543, 554, 71 S.Ct. 399, 406, 95 L.Ed. 523 (1951). However, the United States contends, and the Defendants dispute, that indemnity may be obtained under California law only from concurrent tortfeasors. The Court need not decide this question, however, as it appears clearly from the allegations of the counterclaims that the Defendants may be able to prove facts which would establish that the United States and the Defendants are concurrent tortfeasors.

■ Having determined that the United States has waived its sovereign immunity as to the tort counterclaims seeking recoupment and indemnity, the Court must determine whether the counterclaims fall within the scope of the waiver. The substantive requirements of the F.T.C.A. set forth the scope of the United States' waiver of immunity. Even counterclaims seeking equitable recoupment are subject to these requirements. *See FDIC v. Carter,* 701 F.Supp. 730, 733–34 (C.D.Cal.1987) ("It is perhaps more accurate to say that the institution of the action [by the FDIC]

waives the procedural requirements of the FTCA.... However, the waiver of sovereign immunity implied from the FDIC's decision to bring this suit should not be understood as a waiver of the substantive, non-procedural exclusions from liability contained in the FTCA.... To grant a litigant additional substantive rights against the Government as a defendant over those rights the litigant would have as a plaintiff would result in an unacceptable anomaly."). The substantive provisions of the FTCA provide, in pertinent part, that the District Court has jurisdiction over suits against the United States,

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). These requirements have been satisfied by the counterclaims before the Court. In particular, as required by the preceding language, all Defendants have suffered an "injury" as a result of being singled out by the Government for potential CERCLA liability. *See* discussion *infra* section II.a.1.

Accordingly, this Court has jurisdiction over both Defendants' "defensive" claims for recoupment seeking relief of the same form and nature as that sought by the United States, *2,116 Boxes of Boned Beef,* 726 F.2d at 1490, and Defendants' derivative claims for indemnity.[3]

---

**2.** The Ninth Circuit has observed that "Counterclaims under the F.T.C.A. have been permitted only when the principal action by the United States was in tort and the counterclaim was compulsory in nature." *Spawr v. United States,* 796 F.2d 279, 281 (9th Cir.1986). Here, the United States action was based exclusively on CERCLA. An action for natural resource damages under CERCLA "sounds basically in tort." *In re Acushnet River & New Bedford Harbor: Proceedings re Alleged PCB Pollution,* 712 F.Supp. 994, 1000 (D.Mass.1989). Furthermore, Defendants' tort counterclaims are clearly compulsory.

**3.** At this stage in the litigation, the Defendants will be allowed to pursue both recoupment and indemnity claims against the United States. However, Defendants ultimately will be allowed to recover, if at all, under only one of the two theories.

Furthermore, the Defendants may be entitled to indemnification from the United States for all liability, if any, including liability to the State of California. However, as will be discussed below, the Defendants are not entitled to indemnification from the State of California, because the State's Eleventh Amendment immu-

### 2. Failure to State Claim

The United States next argues that even if it has waived its immunity, the Defendants fail to adequately state claims under the F.T.C.A. for negligence per se, dangerous condition, and nuisance. Accordingly, the Government argues that the Court lacks subject matter jurisdiction over these claims.

■ First, with respect to the counterclaim for negligence per se, the United States argues that negligence per se is a form of liability without fault and is thus prohibited under the F.T.C.A. However, the United States mischaracterizes the doctrine of negligence per se. The doctrine does not provide for strict liability, but merely creates a rebuttable presumption of negligence upon a showing that a person violated a statute. Thus, the Government's argument lacks merit.

■ Second, with respect to the counterclaims for dangerous condition, the United States argues that under the F.T.C.A., the United States can only be held liable to the extent that a private person could be held liable under state law. Accordingly, since California Government Code § 835 provides for liability of the *State* for maintaining a dangerous condition on public property, it cannot be the basis of an action against a private person, and thus it cannot be the basis for an action against the United States under the F.T.C.A. This argument appears to have merit, since Defendants apparently rely on § 835 as the basis for their claims.[4] Therefore, the United States' Motion is granted and Defendants' claims based on dangerous condition of public property are dismissed.

■ Finally, with respect to the counterclaims for public nuisance, the Government appears to seek dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Government argues that the Defendants have not alleged a "special injury" as required by California Public Nuisance Law. However, as previously discussed, the Defendants have suf-

fered a "special injury" as a result of being singled out from the rest of the public for potential CERCLA liability.

For the preceding reasons, the United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction is granted as to Defendants' counterclaims for dangerous condition of public property, but denied as to Defendants' other tort counterclaims.

## II. CALIFORNIA'S MOTIONS TO DISMISS

The State of California has filed with this Court five motions containing numerous subparts. The State moves for: (1) the Court to dismiss Defendants' tort counterclaims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1); (2) the Court to dismiss Defendants' tort counterclaims for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) or to order a more definite statement pursuant to Federal Rule of Civil Procedure 12(e); (3) the Court to dismiss Defendants' CERCLA counterclaims for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6); and (4) the Court to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or to abstain from asserting jurisdiction over, Defendants' counterclaims which seek to invalidate the "White Croaker" Regulation enacted by the California Department of Fish and Game. In addition, the State has moved, along with South Coast Management Air Quality District, for the Court to abstain from asserting jurisdiction over Defendants' tort counterclaims under the *"Burford* doctrine." *See infra* section IV.

### a. *Tort Counterclaims*

#### 1. Eleventh Amendment and Sovereign Immunity

■ California first argues that the Court lacks subject matter jurisdiction over the Defendants' tort counterclaims because

---

**4.** *See* Montrose Counterclaims ¶¶ 58–69; Stauffer Counterclaims ¶¶ 49–54.

nity has been waived only for recoupment claims.

of California's immunities from suit under both the Eleventh Amendment and the doctrine of sovereign immunity. The Eleventh Amendment restrains the federal judicial power to hear suits against an unconsenting state. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 98–99, 104 S.Ct. 900, 906–07, 79 L.Ed.2d 67 (1984); *Riggle v. State of California*, 577 F.2d 579, 581–82 (9th Cir.1978). In contrast, the doctrine of sovereign immunity protects the state from all suits in all courts. *Pennhurst*, 465 U.S. at 99, 104 S.Ct. at 907. Both of these doctrine can be waived by the state. A state waives its Eleventh Amendment and sovereign immunities as to compulsory recoupment counterclaims by filing a complaint in federal court.[5] *United States v. Mottolo*, 605 F.Supp. 898, 910 (D.N.H.1985) ("Filing suit as a plaintiff constitutes a waiver of Eleventh Amendment immunity as well as sovereign immunity with respect to any counterclaim asserted by a defendant which arises out of the same event underlying the State's claim and which is asserted defensively in recoupment for the purpose of diminishing the State's recovery"); *Woelffer v. Happy States of America, Inc.*, 626 F.Supp. 499, 502 (N.D.Ill.1985). In the present case, the United States and State of California initiated this litigation by bringing their suits in this Court. Defendants' counterclaims are clearly compulsory as they arise out of the same occurrence as the underlying claims. Fed.R.Civ.P. 13(a); *State of New York v. City of Johnstown, N.Y.*, 701 F.Supp. 33, 37 (N.D.N.Y. 1988). Accordingly, the State has waived both its Eleventh Amendment and sovereign immunities as to Defendants' recoupment claims.

■ The State next argues that even if it has waived its Eleventh Amendment immunity, Defendants' claims are barred by the substantive requirements of the California Tort Claims Act, Cal.Gov't Code § 810 *et seq.*, and by numerous statutory immunities. The State cites *State of New York v. City of Johnstown, N.Y.*, 701 F.Supp. 33 (N.D.N.Y.1988) for the proposition that the State's filing of suit does not waive statutory governmental immunities. In *Johnstown* the State of New York filed suit against the defendant under CERCLA, and the defendant counterclaimed under both CERCLA and New York common law. The State raised several defenses to the counterclaims including the "discretionary act" doctrine. The defendant argued that by filing suit the State had waived its sovereign immunity, and thus it could not raise the "discretionary act" doctrine. However, the Court rejected the defendant's argument, ruling that the "defendants *may* be able to assert a claim for recoupment against the State, subject to whatever defenses the State may raise, including the 'discretionary act' doctrine." *Id.* at 38.

The *Johnstown* case does not resolve the issues facing this Court. This Court must determine whether the State, by filing suit in federal court, waived its statutory immunities to suit and/or waived the substantive limitations to suit set forth in the California Tort Claims Act. *Johnstown* only discussed waiver in the context of New York's 'discretionary act' doctrine. However, the Court need not resolve this question now, because it finds, as set forth below, that even if the statutory provisions were not waived, the provisions do not require dismissal of Defendants' counterclaims.

First, the State argues that Defendants have failed to state a claim cognizable under the California Tort Claims Act. The Act waives California's immunity as to statutorily created causes of action. Specifically, § 815 provides that,

Except as otherwise provided by statute:

(a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.

---

**5.** Defendants have also alleged claims under the California Tort Claims Act, Cal.Gov't Code § 810 *et seq.*, seeking indemnity and forms of affirmative relief. These claims must be dismissed as the Tort Claims Act *does not* waive the States

Eleventh Amendment Immunity. *Riggle v. State of California*, 577 F.2d 579, 585–86 (9th Cir.1978). Accordingly, Defendants may go forward against the State only on their claims for recoupment.

(b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person.

Cal.Gov't Code § 815 (West 1980). Here, Defendants have counterclaimed against California under several statutorily created causes of action; to wit, (1) negligence/negligence per se (California Government Code §§ 815.2 and 815.4), (2) nuisance (California Civil Code §§ 3479–80), (3) dangerous condition of public property (California Government Code § 835), and (4) failure to discharge mandatory duty (California Government Code § 815.6). Each of these provisions requires a claimant to have suffered an "injury." For the purposes of governmental liability, § 810.8 defines "injury" as:

> [D]eath, injury to a person, damage to or loss of property, or any other injury that a person may suffer to his person, reputation, character, feelings or estate, of such nature that it would be actionable if inflicted by a private person.

Cal.Gov't Code § 810.8 (West 1980).

In the present case, the Defendants have suffered an injury cognizable under the California Tort Claims Act. The Defendants have been singled out by the Government for potential CERCLA liability in monetary damages. If Defendants are held liable in the underlying CERCLA suit for the "response costs" necessary to abate the hazardous condition and for alleged damages to natural resources they will be required to pay enormous sums of money. Thus, the State should not be allowed to insulate itself from potential tort liability by claiming that the Defendants' have suffered no "injury." If the trier of fact determines that the Defendants are liable to the State under CERCLA, and that the State is liable under one of the alleged tort theories, the Defendants should recover from the State, by way of recoupment, to the extent of the State's liability. *See E.L. White, Inc. v. City of Huntington*, 21

Cal.3d 497, 511–512 & nn. 9–11, 579 P.2d 505, 146 Cal.Rptr. 614 (1978) (allowing a party to seek indemnification from the governmental entity, the Court held that the party's "injury" under California Government Code §§ 810.8 and 835, was the payment of a monetary judgment.)

■ Second, the State argues that various provisions of the Government Code insulate it from liability; to wit, California Government Code §§ 818.4 ("License Immunity"), 818.6 ("Inspection Immunity"), 818.2 ("Enactment Immunity"), 820.2 ("Discretionary Immunity"), 818.8 ("Misrepresentation Immunity"), and 815(a) ("General Immunity"). However, the Court finds that the provisions cited by California are inapplicable to the allegations of the Defendants' counterclaims. The Defendants have alleged that California is liable for causing and allowing releases of hazardous substances, and for failing to abate any contamination. None of the above cited provisions provides the State with immunity with respect to these alleged acts and omissions.

■ Having determined that the State has waived both its Eleventh Amendment and Sovereign immunities, the Court must next determine the scope of the waiver. The State has waived its Eleventh Amendment Immunity solely with respect to "defensive" type claims for recoupment or setoff; thus, the Defendants may not obtain affirmative relief. *Woelffer*, 626 F.Supp. at 502; *Mottolo*, 605 F.Supp. at 910; *State of Alaska v. O/S Lynn Kendall*, 310 F.Supp. 433, 435 (D.Alaska 1970). The Court has jurisdiction over the portions of the counterclaims which "mirror" the complaint. *Woelffer*, 626 F.Supp. at 502.

■ In this context, certain of Defendants' counterclaims deserve special mention. In its complaint, the State seeks response costs, natural resource damages, and declaratory relief. In contrast, Defendant Montrose's counterclaims against the State seek, in addition to monetary damages, an injunction ordering the State to

abate the alleged hazardous conditions.[6] Similarly, Defendants Chris–Craft and Stauffer seek injunctive relief ordering the State to fulfill its "state law responsibilities."[7] These claims seek impermissible affirmative relief beyond monetary damages and must be dismissed. Defendants also seek from California indemnification for any amount for which the Defendants are adjudged liable to the United States. These claims seek impermissible affirmative relief and must also be dismissed. Finally, Defendants seek attorneys fees and costs. Such relief, if any, is to be *limited* to the extent which it defeats or diminishes California's claims, if any, for attorneys fees and costs against the Defendants.

For the preceding reasons, and with limitations as noted, the State's Motion to Dismiss Defendants' tort based recoupment claims for lack of subject matter jurisdiction is granted in part and denied in part. However, the Motion to Dismiss Defendants' claims for indemnity from the State is granted, because the Court lacks subject matter jurisdiction under the Eleventh Amendment.

### 2. Failure to State a Claim

As previously noted, Defendants have counterclaimed against the State under theories of negligence/negligence per se, nuisance, dangerous condition of public property, failure to discharge mandatory duty, and breach of trust. The State now moves to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, or in the alternative, for the Court to order a more definite statement pursuant to Federal Rule Of Civil Procedure 12(e). The Court will briefly address each of these contentions.

 First, with respect to the counterclaims for negligence, the Defendants allege, among other things, that the State had a mandatory duty to manage and oversee activities and facilities located in the San Pedro Channel Areas, and to abate any hazardous conditions. They further allege that the State failed to exercise due care in discharging these duties, that the release of hazardous substances was proximately caused by this failure, and that Defendants have suffered injury—potential CERCLA liability—as a result of this failure.[8]

 Second, with respect to the counterclaims for dangerous condition, the Defendants allege, among other things, that the San Pedro Channel Area is a dangerous condition, knowingly and unreasonably caused by the acts or omissions of the State, and that Defendants have suffered injury—potential liability—as a result of the State's acts or omissions.[9]

 Third, with respect to the counterclaims for public nuisance, the Defendants allege, among other things, that the State failed to abate or remedy discharges and releases of hazardous substances into the San Pedro Channel areas. They further allege that the releases constitute a public nuisance, and that Defendants have suffered a "special injury" as a result of being singled out from the general public for potential CERCLA liability.[10]

 Fourth, with respect to Defendants' counterclaims for breach of mandatory duty, it appears that Defendants have stated a claim against the State as to several alleged statutory provisions; to wit, California Water Code §§ 13305 (Mandatory Duty to Abate), and 13142.5 (Mandatory Duty to treat waste water discharges); California Health & Safety Code §§ 25150(a) (Mandatory duty to promulgate regulations for the management of hazardous waste), 39002 (Mandatory duty to undertake control activities), and 39606 (Mandatory duty to adopt standards of ambient air quality); the "Clean Air Act", 42 U.S.C. § 7410 (Mandatory duty to adopt and submit a plan to the EPA which provides for the implementation of air quality stan-

---

**6.** Montrose Counterclaims at pp. 45–46.

**7.** Chris–Craft Counterclaims at pp. 36–37; Stauffer Counterclaims at pp. 33–34.

**8.** *See* Stauffer Counterclaims at ¶¶ 57–63.

**9.** *See* Stauffer Counterclaims at ¶¶ 50–56.

**10.** *See* Stauffer Counterclaims at ¶¶ 44–49.

dards); and the "Clean Water Act", 33 U.S.C. § 1313(c) (Mandatory duty to revise and adopt water quality standards). However, the following alleged statutory provisions do not create mandatory duties, and must be stricken from the counterclaims; to wit, California Health & Safety Code §§ 4510, 25100, and 25101(a); The Resource Conservation & Recovery Act (RCRA), 42 U.S.C. §§ 6901–6992k; and the "Clean Water Act", 33 U.S.C. § 1311(a).

 Finally, with respect to the Defendants' counterclaims for breach of trust, the State argues that the Defendants have failed to state a claim because they lack standing. This argument is without merit as the California Supreme Court has consistently held that any member of the public has standing to raise a claim of harm to the public trust. *See National Audubon Society v. Superior Court,* 33 Cal.3d 419, 431 n. 11, 658 P.2d 709, 189 Cal.Rptr. 346, *cert. denied,* 464 U.S. 977, 104 S.Ct. 413, 78 L.Ed.2d 351 (1983).

After careful scrutiny of the aforementioned counterclaims, it appears that Defendants have properly alleged the necessary elements of each state tort claim. At this early stage in the litigation, without the benefit of complete discovery,[11] the Defendants have sufficiently put the State on notice as to the nature of the claims against it. *Hickman v. Taylor,* 329 U.S. 495, 501, 67 S.Ct. 385, 389, 91 L.Ed. 451 (1947). It further appears that Defendants may be able to prove facts in support of each counterclaim which would entitle them to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Accordingly, the Motion to Dismiss For Failure to State a Claim and the Motion for a More Definite Statement are denied.

**3. Exclusive Remedy**

 Finally, the State argues that CERCLA is an "exclusive remedy," such that a person who is potentially liable under CERCLA cannot also be sued under tort law. The State relies on CERCLA section 113(f)(1), which provides, in relevant part, that:

> Nothing in this subsection shall diminish the right of any person to bring an action for contribution *in the absence* of a civil action under section 9606 or section 9607 of this title.

42 U.S.C. § 9613(f)(1) (emphasis added). The State reads this provision as allowing a non-CERCLA action only if there is no potential CERCLA liability. While this interpretation is plausible,[12] the Court reads this language to allow a non-CERCLA claim *even if* there is no potential CERCLA liability. Accordingly, the Court holds as a matter of law that CERCLA is not an exclusive remedy, and that Defendants are entitled to bring counterclaims based on *both* CERCLA and tort law.

**b. *CERCLA Counterclaims***

 The State next argues that Defendants have failed to state a claim based on CERCLA. However, in addition to the other elements of a CERCLA claim, Defendants have properly alleged that the State is a "responsible party" under one or more provisions of CERCLA section 107(a), 42 U.S.C. § 9607(a).[13] Specifically, Defendants have alleged that the State owns and operates several offshore areas, including the San Pedro Channel, Los Angeles Harbor and the Palos Verdes Shelf, alleged to be "facilities" from which hazardous substances were released.[14] Defendants have also alleged that the State generated,

**11.** In fact, Defendants filed a Motion to Compel Production of Documents indicating their frustration with their inability to obtain complete discovery from the Government. The Motion was denied by the Special Master, but on review this Court ordered that the Government commence production immediately. *See* Order dated November 12, 1991.

**12.** *See United States v. Stringfellow,* 911 F.2d 225, 227 (9th Cir.1990) (reversing sanctions

against the Government for making a similar argument, the Court found that the interpretation was *plausible*).

**13.** States are expressly included in the definition of "persons" who may be held liable under CERCLA. 42 U.S.C. § 9601(21).

**14.** *See, e.g.,* Montrose Counterclaims at ¶¶ 39–40.

transported and arranged for disposal, treatment and transport for disposal or treatment, of hazardous substances to the San Pedro Channel area.[15] Accordingly, Defendants have sufficiently stated a claim against California.

#### c. Counterclaims Directed To White Croaker Regulation

■ California has filed a Motion to Dismiss Defendants' counterclaims which seek declaratory relief invalidating the "White Croaker Regulation", § 104, Title 14, California Code of Regulations, for lack of subject matter jurisdiction pursuant to Federal Rule 12(b)(1). In the alternative, California moves for the Court to abstain from asserting jurisdiction over these counterclaims. The Court hereby orders that a stay be issued prohibiting either Plaintiffs or Defendants from taking any action with respect to the litigation over this issue. Something smells fishy about the White Croaker Regulation and the way it was promulgated. However, the Court does not want to cure this odor by smothering it with legal cologne. Accordingly, a stay on all litigation over this issue is imposed so that the Court may consider the issue at length.

### III. SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT'S MOTION TO DISMISS MONTROSE'S COUNTERCLAIMS

■ South Coast first argues that the Court should dismiss Montrose's[16] tort counterclaims for lack of subject matter jurisdiction, because South Coast is immune from suit in federal court under the Eleventh Amendment. However, even though South Coast has filed no claims against Montrose, as an agency of the State its immunity was waived when the State filed its complaint in this Court. Accordingly, for the reasons and with the limitations set forth in the Court's discussion of the State's Motion to Dismiss, *see*

*supra* section II.a.1, the Court denies South Coast's Motion to Dismiss.

■ South Coast also argues that Montrose has failed to state a claim based on either CERCLA or tort law. However, a close examination of Montrose's pleadings establishes that, at this stage in the litigation, it has sufficiently stated its claims. *See supra* sections II.a.2 & II.b and accompanying notes.

### IV. SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT'S AND STATE OF CALIFORNIA'S MOTIONS FOR THE COURT TO ABSTAIN FROM EXERCISING JURISDICTION OVER DEFENDANTS' STATE TORT COUNTERCLAIMS

■ Both the State of California and South Coast have moved for the Court to abstain from asserting jurisdiction over Defendants' tort counterclaims pursuant to the *"Burford* doctrine" of abstention. In *New Orleans Pub. Serv., Inc. v. New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989), the Supreme Court succinctly set forth the doctrine:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

This doctrine does not require the Court to abstain from hearing Defendant's tort counterclaims. There are no "difficult issues of state law" or "matter[s] of substantial concern"; in fact, many of the issues implicating state tort law can be resolved

---

**15.** *See, e.g.,* Montrose Counterclaims at ¶¶ 41–42.

**16.** Montrose is the only defendant to have specifically named South Coast, an agency of the State of California, in its counterclaims.

easily at trial by factual determinations and application of well established principles of statutory interpretation. Furthermore, CERCLA expressly contemplates that a person may bring an action based on state tort law. CERCLA section 113(f), 42 U.S.C. § 9613(f) expressly "saves" such actions. *See supra* section II.a.3. Finally, the State itself chose this forum to obtain relief from the Defendants, yet it now seeks to force the Defendants to resolve their claims in State court. This tactic goes directly against the grain of the Court's notions of fairness and justice.

## V. CONCLUSION AND ORDER

For the reasons set forth in this Decision, and good cause appearing, it is hereby ordered that:

1. The United States' Motion to Dismiss is granted in part as to Defendants' counterclaims for dangerous condition of public property, and denied in part as to the rest of Defendants' tort counterclaims.

2. The State of California's Motion to Dismiss is granted in part as to all of Defendants' counterclaims for indemnity and as to Defendants' counterclaims for recoupment to the extent that, as discussed above, they seek affirmative relief, and denied in part as to the rest of Defendants' recoupment counterclaims, with certain allegations under the mandatory duty claims to be stricken. Furthermore, the State's Motion to Dismiss Defendants' CERCLA counterclaims is denied. Furthermore, the State's Motion to Dismiss, or Abstain from asserting jurisdiction over, Defendants' counterclaims seeking declaratory relief invalidating the "White Croaker" regulation is neither granted nor denied as all litigation on the issue is stayed. Furthermore, the State's Motion for the Court to abstain from asserting jurisdiction over Defendants' tort counterclaims is denied.

3. South Coast Air Quality Management District's Motion to Dismiss is granted in part as to all of Montrose's counterclaims for indemnity and as to Montrose's counterclaims for recoupment to the extent that, as set forth above, they seek affirmative relief, and denied in part as to the rest

of Montrose's recoupment counterclaims. Furthermore, South Coast's Motion to Dismiss Montrose's CERCLA counterclaims is denied. Furthermore, South Coast's Motion to Abstain is denied.

4. Counsel for Chris–Craft Industries, Inc. shall serve copies of this Decision upon all parties through counsel of record.